IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

CLIFF PEARSON,

                    Plaintiff,

              vs.                             Case No. 07-1154-JTM

MICHAEL J. ASTRUE,
Commissioner of Social Security

                    Defendant.

## MEMORANDUM AND ORDER

Cliff Pearson's (Pearson) two applications made under the Social Security Act were denied initially and upon reconsideration. On September 29, 2006, after an administrative hearing, the Administrative Law Judge (ALJ) issued his opinion in which he ruled that Pearson was not disabled.  On April 20, 2007, the Appeals Council of the Social Security Administration denied Pearson's request for review of the ALJ's decision, rendering the ALJ's decision as final. Pearson then filed his petition for review, which is currently before the court (Dkt. No. 9).  For the following reasons, this court denies Pearson's petition for review, and affirms the decision of the ALJ.

### I.  Background

On July 19, 2005, at the age of 51, Pearson protectively filed the applications at issue in this case for disability benefits and for Supplemental Security Income (SSI) benefits.  In his Disability Report, he alleged disability due to back and memory problems, depression, and

anxiety.  At the time of his administrative hearing, Pearson testified that he had a tenth grade education and a GED, and that he had previously worked as a bartender/server, leak tester, warehouse laborer, cashier, and stocker.

Pearson was initially referred to Horizons Mental Health Center by the court after receiving a disorderly conduct charge, and was expected to submit to an evaluation for possible "anger management."  On March 1, 2005, Pearson was seen by Dr. Delmer Thibault, a licensed master-level psychologist and licensed clinical psychotherapist, who diagnosed Pearson with generalized anxiety disorder, dysthymia, and schizoid personality traits with self defeating features.

On June 14, 2005, Dr. Luis Alonzo, a psychiatrist at Horizons, began treating Pearson with medication for depression, anxiety, and bipolar disorder.  On November 29, 2005,  Dr. Carol Adams completed a Psychiatric Review Technique Form after reviewing an independently-completed report of Pearson's activities of daily living, a third party report from a friend, and available medical records.  Dr. Adams noted the necessity of a Residual Functional Capacity (RFC) assessment, and further noted that Pearson's impairments were severe, but did not meet nor equal a listing.  She also found that while his concentration, persistence, and pace were moderately impaired, they could improve with medication and treatment.  She identified his allegations as partially credible, but pointed out inconsistencies in his reported use of alcohol.  Finally, she reported that his daily living activities and social interaction were only mildly impaired.

Dr. Alonzo completed a Mental RFC Assessment and a medical Opinion to Medical Listing form, in which he noted that Pearson's mental limitations met the listing required by

statute.  However, neither his treatment notes nor the longitudinal medical records support the extent of limitation that he reported in his formal opinion.

In his opinion denying Pearson Social Security, the ALJ noted that although Dr. Alonzo's treating relationship with Pearson would generally be accorded controlling weight, such deference was improper because of the inconsistent record.  Further, the ALJ noted that Dr. Alonzo based most of his opinion on Pearson's own reports, which were deemed not credible.

Noting that the decision regarding disability is reserved to the Commissioner based on all the evidence, the ALJ ruled that he was not persuaded by Dr. Alonzo's opinion to the extent he intends to assert Pearson was completely disabled under the Social Security Act.  Specifically, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease and arthritis of the cervical spine; left shoulder impingement status post shoulder surgery; major depressive disorder/dysthymia; generalized anxiety disorder; and schizoid personality traits with self-defeating features.  He found Pearson did not have an impairment or combination of impairments that met or equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing of Impairments. The ALJ determined Pearson had the RFC to perform a restricted range of medium work activity.  After determining  Pearson could not perform his past relevant work, the ALJ relied on vocational expert testimony to determine that Pearson could perform other work available in the economy.  Therefore, the ALJ found Pearson was not disabled as defined in the Social Security Act.

Pearson brings this appeal, alleging that the ALJ erred by failing to follow the treating physician rule, failing to properly derive a RFC with substantial evidence, and failing to perform

a proper credibility analysis.  The Commissioner counters that the final decision is supported by substantial evidence on the record as a whole.

## II.  Standard of Review

This court's review of the final decision is guided by the Social Security Act, which provides that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Accordingly, the court should review the decision to determine only whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the correct legal standard was applied.  *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion.  *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994); *Gossett v. Bowen*, 862 F.2d 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *White*, 287 F.3d at 905 (quoting *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

The Commissioner has established a five-step sequential evaluation process for determining whether an individual is disabled.  *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); 20 C.F.R. § 404.1520(a) (2003).  The steps are followed in order and if it is determined that the claimant is or is not disabled at a step of the evaluation process, evaluation under a subsequent step is unnecessary.

The first three steps require the Commissioner to assess whether: (1) the claimant has engaged in substantial gainful activity (SGA) since the alleged onset of the disability; (2) the claimant has severe impairments; and (3) the severity of the claimant's impairments meets or

equals a specific list of impairments. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). If the impairment does not meet or equal a listed impairment, the ALJ may determine the claimant's residual functional capacity (RFC), which is the ability to do physical and mental work activities on a sustained basis despite limitations from impairments. 20 C.F.R. § 416.920(e).

Upon assessing the claimant's RFC, the Commissioner can then move on to steps four and five which require assessing whether the claimant: (4) can perform past relevant work, and (5) can generally perform other work in the national economy. *Williams*, 844 F.2d at 751. The claimant bears the burden throughout steps one through four to prove a disability that prevents performance of past relevant work. *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). The burden then shifts to the Commissioner at step five to show other jobs in the national economy that are within the claimant's capacity to perform. *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

### III. Analysis

Pearson claims that the ALJ erred by: (1) failing to give controlling weight to Dr. Alonzo's formal opinion as recorded on the Mental RFC Assessment and Medical Opinion to Medical Listing 12.04 forms; (2) failing to provide substantial evidence to support the RFC conclusions; and (3)failing to perform a proper credibility analysis.

### A. Controlling Weight Analysis

When determining whether to give a treating physician's opinion controlling weight, the ALJ must first consider "whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Coleman v. Astrue*, 523 F. Supp. 2d 1264, 1270 (D. Kan.

2007) (citations omitted).  If the opinion is well-supported, the ALJ must then consider whether the opinion is consistent with other substantial evidence in the record.  *Id.*  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  *Id.*

Even if the treating source opinion is not given controlling weight, however, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  *Id.*  These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the amount of relevant evidence used to support an opinion; (4) the level of consistency in the record as a whole; (5) whether the opinion comes from a specialist in the area in question; and (6) other factors that tend to support or contradict the opinion.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2)(I) – (ii), (d)(3) – (d)(6).  After considering those factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.

When a treating physician's opinion conflicts with other medical evidence, the ALJ must decide if the other physicians' reports outweigh the treating physician's report.  *Coleman*, 523 F. Supp. 2d at 1270 (citations omitted).  Finally, an ALJ must explain the rationale behind the amount of weight given to a treating physician's opinion.  *Id.*  If the treating physician's opinion is rejected completely, the ALJ must give "specific, legitimate reasons for doing so."  *Id.*

Pearson argues that the ALJ failed to properly evaluate Dr. Alonzo's medical opinion, while the Commissioner counters it was properly rejected.  In this case, the ALJ found the opinion of Pearson's treating psychiatrist, Dr. Alonzo, should not be given controlling weight and that the opinion was not persuasive to the extent that Dr. Alonzo thought Pearson was

disabled.  In making this decision, the ALJ noted that Dr. Alonzo's opinion was based on Pearson's own report of his condition, and that Pearson is not considered credible, thus suggesting Dr. Alonzo's opinion was not "well-supported."  Furthermore, the ALJ pointed out that Dr. Alonzo's opinions were inconsistent with the rest of the record.  For example, Dr. Alonzo's treatment notes classify Pearson's condition as ranging from mild to moderate, yet he later reported Pearson had marked limitations, suggesting a more serious condition.  However, the reports of both Dr. Thibault and Dr. Goodman reported that Pearson's condition was mild to moderate.  Based on the facts that Dr. Alonzo's opinion was not well-supported or consistent with the rest of the record, the ALJ found it was not entitled to controlling weight.

After determining Dr. Alonzo's opinion was not entitled to controlling weight, the ALJ then considered what weight should be given to it and noted that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527."  The ALJ also looked at whether the other doctors' opinions, including Dr. Alonzo's treatment notes, outweighed Dr. Alonzo's official opinions.  For example, the ALJ noted that Dr. Goodman reviewed the record and examined Pearson, and his opinion was consistent with Dr. Adams' assessment and Dr. Alonzo's treatment notes.  Consequently, the ALJ found that Dr. Goodman's opinion should be given significant weight.

As discussed above, Dr. Alonzo's treatment notes did not support his formal opinion.  Further, the longitudinal medical record did not support Dr. Alonzo's opinion.  Additionally, Dr. Alonzo's formal opinion consisted of checkmarks and circled phrases on a pre-printed form, and lacked explanation.  As such, the ALJ properly rejected the treating physicians opinion, in part,

because he provided legitimate reasons for doing so.  Accordingly, the ALJ's determination of

the weight to be given to Dr. Alonzo's formal opinion is supported by substantial evidence.

### B.  Sufficient Evidence to Support RFC Conclusions

Pearson argues the ALJ improperly concluded that he retained the RFC to perform a

medium exertional level of work, with additional physical restrictions.  Instead, Pearson argues

there is no evidence that he could perform work for an eight hour day.

In assessing RFC, the ALJ must consider a claimant's abilities to meet the demands of

work in spite of impairments, based upon all relevant evidence in the record.  *Coleman*, 523 F.

Supp. 2d at 1273.  The ALJ must address limitations caused by all of the claimant's impairments,

including impairments that are not classified as "severe," and should also consider the claimant's

physical and mental abilities in addition to abilities to work in certain environments.  *Id. at* 1274.

Furthermore, the analysis requires a function-by-function consideration of each work-related

ability before defining the claimant's RFC in terms of the exertional categories, as well as a

narrative discussion with specific medical facts to support each conclusion, an explanation of

how the claimant is able to perform sustained work activities, and the maximum amount of each

activity the claimant can perform.  *Id.*

In terms of Pearson's physical capabilities, the ALJ found Pearson could occasionally lift

fifty pounds, frequently lift twenty-five pounds and could stand, walk, and sit, for about six hours

of an eight hour workday.  Because of his recent shoulder surgery, the ALJ stated that Pearson

was unable to perform any over the shoulder work with his left arm, and recommended that he

avoid concentrated exposure to extreme cold and vibration.  Finally, based on these

determinations, the ALJ stated Pearson could perform a restricted range of medium exertional

level work.  Without reweighing the evidence, the court finds that the ALJ considered Pearson's

abilities to work in different environments, the maximum amount of work Pearson could

perform, and provided specific medical facts to support his conclusions.  Therefore, the ALJ did

not err in its assessment of Pearson's physical RFC.  *See id. at* 1273-74.

In terms of Pearson's mental limitations, the ALJ found that Pearson could follow simple

oral instructions and carry out instructions under ordinary supervision providing the work was

very simple, routine, repetitive, concrete, and predictable.  The ALJ also determined he could

intellectually relate to coworkers and supervisors, meet quality standards and production norms,

and sustain work with adequate attendance, provided that the work remains low stress in nature.

This assessment was supported by the opinions of Dr. Thibault. Dr. Goodman, and Dr. Alonzo's

treatment notes.  Without reweighing the evidence, the court finds that the ALJ considered

Pearson's abilities to work in different environments and provided specific medical facts to

support his conclusions.  Therefore the ALJ did not err in its assessment of Pearson's mental

RFC.  *See id.*

### C.  The ALJ's Credibility Analysis

On review, the credibility determinations of an ALJ are generally treated as binding.

*Ninemires v. Astrue*, 524 F. Supp. 2d 1331, 1338 (D. Kan. 2007) (citations omitted).  While the

court generally defers to the ALJ, who, as the trier of fact, is in the best position to observe and

assess a claimant's credibility, the ALJ's decision "should be closely and affirmatively linked to

substantial evidence and not just a conclusion in the guise of findings."  *Id.*  The ALJ must

decide whether there is a medically determinable impairment that could reasonably produce the

alleged symptoms.  *Id.*  The ALJ must then support his determination with specific evidence

from the record, and, if the claimant is deemed only partly credible, explain what part of the testimony he accepts or rejects and why.  *Id.*

The ALJ took great care to detail and evaluate Pearson's credibility.  When analyzing evidence of disabling pain, the ALJ should consider: (1) whether claimant proves with objective medical evidence an impairment that causes pain; (2) if so, whether a loose nexus exists between the impairment and the subjective complaints of pain; and (3) if so, whether the pain is disabling based upon all objective and subjective evidence.  *See, Glass v. Shalala*, 3 F.3d 1392, 1395 (10th Cir. 1994).

In this case, the ALJ specifically noted several inconsistencies between Pearson's allegations of disabling pain, his testimony, and the record as a whole.  Further, the ALJ noted inconsistencies in Pearson's report of the level of education he had completed, how often he drank alcohol, and his ability to remember and follow a schedule.  Inconsistent evidence or contradictory statements constitute a legally sufficient reason for disbelieving the claimant's subjective complaints.  *See Brown v. Bowen*, 801 F.2d 361, 363 (10th Cir. 1986).

The ALJ also noted that Pearson is on probation and not required to pay his fine as long as he is not working, which might provide an incentive for Pearson to exaggerate his symptoms.  Based on these facts, the ALJ concluded that while the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.

Additionally, the ALJ noted that Pearson appeared to be unmotivated to work, and free from pain during the administrative hearing, which lasted almost an hour.  Great deference

should be given to the ALJ's determination of credibility.  *Fowlr v. Bowen*, 876 F.2d 1451, 1455

(10th Cir. 1989).  In sum, the ALJ went to great lengths to discuss, in detail, the reasons for his

opinion.

   Without reweighing the evidence, the court finds that the ALJ has made the necessary

findings, which are supported by specific evidence, and has explained which parts of the

claimant's testimony he deems credible and why.  Consequently, the ALJ properly analyzed

Pearson's credibility.  *See id.*

   IT IS THEREFORE ORDERED this 18th day of September 2008, that the present appeal

is denied, and  the decision of the ALJ is affirmed.

s/ J. Thomas Marten
 J. THOMAS MARTEN, JUDGE